IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WILLIAM HYNDMAN, | : | |
|---|---|---|
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| STANLEY JOHNSON and BACK IN TIME CLASSIC, STREET & MUSCLE CARS, INC. | : | NO. 10-7131 |
| | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                                                 February 14, 2011

      Currently pending before the Court is the Motion of Defendants Back In Time Classic, Street & Muscle Cars, Inc. ("Back In Time") and Stanley Johnson (collectively "Defendants") to Dismiss Plaintiff William Hyndman's ("Plaintiff") Complaint for lack of personal jurisdiction pursuant Federal Rule of Civil Procedure 12(b)(2) and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). For the following reasons, the Motion is granted in part and denied in part.

**I.    FACTUAL AND PROCEDURAL HISTORY**

      In August of 2010, Defendants, residents of Georgia, sold a 1957 Ford Thunderbird to Plaintiff, who resides in Doylestown, Pennsylvania. (Compl. ¶¶ 1-4.; Pl.'s Resp. Opp'n at 3-4.) Plaintiff alleges that the vehicle is a counterfeit, and filed this suit against Defendants to recover damages. (Pl.'s Resp. Opp'n at 2.) According to Plaintiff, Defendants advertised the Thunderbird in Hemmings Motor News, a publication to which Plaintiff subscribes. (Id. at 3-4.) Upon reading the advertisement, Plaintiff contacted Defendants to discuss purchasing the

vehicle. (Id. at 4; Defs.' Mot. Dismiss at 2.) Plaintiff and Defendants negotiated the transaction over the course of a month, until they agreed on a purchase price of $125,000. (Pl.'s Resp. Opp'n at 4.) Prior to the sale, Plaintiff had the vehicle examined by an automobile inspector recommended by Defendants, who assured him that the car was authentic. (Id.) Plaintiff then arranged for the shipment of the Thunderbird from Georgia to Pennsylvania, electronically transferred his payment to Defendants on August 19, 2010, and took possession of the vehicle the following day. (Id.; Defs.' Mot. Dismiss at 2.)

After receiving the car, Plaintiff had it inspected by a Pennsylvania-licensed automotive appraisal company, which concluded that the Thunderbird was a counterfeit. (Pl.'s Resp. Opp'n at 5.)[1] Plaintiff filed suit in the Court of Common Pleas of Bucks County, Pennsylvania, alleging breach of contract, intentional misrepresentation, negligent misrepresentation, unfair/deceptive trade practices under 73 Pa.C.S. 201-1, *et. seq.* of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and conversion. (Compl. ¶¶ 25-94.) Defendants filed a Notice of Removal[2] and the present Motion to Dismiss in this Court on December 8, 2010. Plaintiff filed a Response in Opposition on December 28, 2010.

---

[1] Specifically, the appraiser discovered that the Thunderbird contained the following defects:

> (1) [the] trim tag is a counterfeit; (2) the original factory VIN number stampings have been tampered with and removed in several locations; (3) a counterfeit foil VIN label has been glued to the side of the right rear frame rail; (4) all visible components of the engine have had casting numbers and dates ground off; and (5) . . . the entire engine assembly is from a standard D-Code 1956 Thunderbird and not part of a F-Code vehicle.

(Pl.'s Resp. Opp'n at 5.)

[2] This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant bears the initial burden of raising the lack of personal jurisdiction defense. Nat'l Paintball Supply, Inc. v. Cossio, 996 F. Supp. 459, 460 (E.D. Pa. 1998) (citing Clark v. Matsushita Elec. Indus. Co., Ltd., 811 F. Supp. 1061, 1064 (M.D. Pa. 1993)). Once the defense has been raised, the burden shifts to the plaintiff to demonstrate that jurisdiction exists. Poole v. Sasson, 122 F. Supp. 2d 556, 557 (E.D. Pa. 2000) (citations omitted). Although the court is required to accept as true the allegations of the pleadings and all reasonable inferences therefrom, "a plaintiff may not solely rely on bare pleadings to satisfy his jurisdictional burden. Rather, the plaintiff must offer evidence that establishes with reasonable particularity sufficient contact between the defendant and the forum state to support jurisdiction." Id. If the plaintiff meets this burden, the defendant must then establish the presence of other considerations that would render jurisdiction unreasonable. De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, No. CIV.A.08-00533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008) (citing Carteret Sav. Bank v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992)).

## III. DISCUSSION

### A. Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits. FED. R. CIV. P. 4(k)(1)(A); see also Martin v. Citizens Fin. Group, Inc., No. CIV.A.10-260, 2010 WL 3239187, at *3 (E.D. Pa. Aug. 13, 2010). In Pennsylvania, personal jurisdiction over nonresident defendants is permitted "to the fullest extent allowed

under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 PA. CONS. STAT. § 5322(b); see also Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992) ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment.").

The Due Process Clause "requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 299-300 (3d Cir. 2008) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Two types of personal jurisdiction have been recognized by federal courts: "general and specific jurisdiction. General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." Id. at 300 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984)). Specific jurisdiction is present "when the claim arises from or relates to conduct purposely directed at the forum state." Id. (citing Helicopteros, 466 U.S. at 414-15 & n.8).

Plaintiff has not presented any evidence that Defendants have maintained systematic and continuous contacts with Pennsylvania, which would create general jurisdiction in this case. The Court's inquiry is therefore limited to whether it can exercise specific jurisdiction over Defendants. In deciding whether specific jurisdiction exists, a district court conducts a three-part analysis. First, the defendant's activities must have been "purposefully directed" at the forum. Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (quoting Burger King v. Rudzewicz, 471

4

U.S. 462, 472 (1985)). Next, "the plaintiff's claim must 'arise out of or relate to' at least one of those specific activities." Id. (quoting Helicopteros, 466 U.S. at 414). Finally, "courts may consider additional factors to ensure that the assertion of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'" Id. (quoting Burger King, 471 U.S. at 476.)

When a plaintiff has alleged an intentional tort, courts should consider the impact of the "effects test" – announced in Calder v. Jones, 465 U.S. 783 (1984) – on their minimum contacts analysis. Vector Sec., Inc. v. Corum, No. CIV.A.03-741, 2003 WL 21293767, at *3 (E.D. Pa. Mar. 21, 2003). The Calder effects test, as described by the Third Circuit, requires a plaintiff to demonstrate the following:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity;

IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998) (footnote omitted). In order to satisfy the third prong of this analysis, "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id. at 266.

In support of their argument that the Court lacks personal jurisdiction in this case, both Defendants contend that they do not reside or do business in Pennsylvania, that Plaintiff was the one who initiated the contract negotiations, and that they never met with Plaintiff in Pennsylvania. (Defs.' Mot. Dismiss at 4.) In addition, they argue that minimum contacts do not exist merely because Defendants exchanged phone calls with Plaintiff, entered into a contractual

5

relationship with him, and accepted funds from a Pennsylvania bank. (Id. at 4-5.) Defendants also contend that exercising jurisdiction in this case would conflict with notions of fair play and substantial justice. They state that the geographic distance between Georgia and Pennsylvania would make litigating in Pennsylvania "an unnecessary hardship," that Pennsylvania has only a minimal interest in this litigation, and that "the resolution of the case will almost certainly require significant amounts of time in Georgia." (Id. at 6.)

In response, Plaintiff argues that this Court has personal jurisdiction over both Defendants pursuant to 42 Pa.C.S. § 5322. (Pl.'s Resp. Opp'n at 7-12.) Pennsylvania authorizes its courts to exercise jurisdiction over those who cause "harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 PA. CONS. STAT. § 5322(a)(4). Plaintiff contends that the harm he suffered in connection with the counterfeit Thunderbird "began with the Defendants outside of Pennsylvania . . . [but] the Commonwealth is where the Plaintiff suffered damages." (Pl.'s Resp. Opp'n at 8.) As such, Plaintiff believes Defendants' activities satisfy Pennsylvania's personal jurisdiction statute.

In the alternative, Plaintiff also argues that Defendants' contacts with Pennsylvania establish jurisdiction pursuant to the Calder effects test. (Id. at 12.) He states that: (1) Defendants committed the tort of intentional misrepresentation; (2) he felt the brunt of the harm in Pennsylvania, where he took possession of the vehicle and discovered it was counterfeit; and (3) this tortious conduct was aimed at Plaintiff in Pennsylvania. (Id. at 14-15.)

Though both Defendants make similar arguments as to why this Court lacks personal jurisdiction over them, there are slightly different considerations for each Defendant, and so the Court analyzes each separately.

1. **Defendant Back In Time**

The Court finds that the alleged facts of this case establish personal jurisdiction over Defendant Back In Time. Back In Time initially reached out beyond its home forum of Georgia when it advertised the Thunderbird in Hemmings Motor News, a national publication. Back In Time was or should have been aware that this periodical would be read by individuals residing outside of Georgia and, indeed, this is how Plaintiff became aware of the vehicle.

Of course, the advertisement alone would not subject Back In Time to jurisdiction in Pennsylvania, but its subsequent business dealings with Plaintiff indicate that exercising specific jurisdiction is proper in this case. After Plaintiff initially contacted Back In Time to express his interest in the Thunderbird, the parties exchanged multiple telephone calls and e-mails in an attempt to work out a deal. Back In Time was aware during the course of these negotiations that Plaintiff was a Pennsylvania resident, and mailed the vehicle's title to Plaintiff in Pennsylvania once the sale was made. If Plaintiff's allegations are accepted as true, which they must be for the purposes of this Motion, Back In Time knew that the Thunderbird was counterfeit when it sold the vehicle and sent the defective title to Plaintiff, thereby directing its tortious activity at Pennsylvania. It therefore follows that Back In Time could have reasonably foreseen being hailed into court in Pennsylvania when Plaintiff, a resident of this forum, took possession of the car and discovered the fraud. Defendant Back In Time's Motion to Dismiss for lack of personal jurisdiction is denied.

2. **Defendant Johnson**

In certain situations, "jurisdiction over corporate officers in their personal capacities may be based on acts performed in their corporate capacity . . . ." Am. Intern. Airways, Inc. v. Am.

Intern. Group, Inc., No. CIV.A.90-7135, 1991 WL 87276, at *4 (E.D. Pa. May 21, 1991). In deciding whether personal jurisdiction exists, courts should consider "the officer's role in the corporate structure, the nature and quality of the officer's forum contacts and the extent and nature of the officer's personal participation in the tortious conduct." Id. (citations omitted). However, "when personal jurisdiction is based on an officer's corporate activities, only those actions taken within the forum state are to be considered in the jurisdictional analysis." Id. (citation omitted). Otherwise, "an individual's transaction of business solely as an officer or agent of a corporation does not create personal jurisdiction over that individual." Feld v. Tele-View, Inc., 422 F. Supp. 1100, 1104 (E.D. Pa. 1976) (citing Miller v. Am. Tele. & Tele. Co., 394 F. Supp. 58, 62-63 (E.D. Pa.1975)).

Here, Plaintiff alleges Defendant Johnson "trades and does business under the name of Back In Time Classic, Street & Muscle Cars." (Compl. ¶ 3.) Defendant Johnson identifies himself as "a shareholder" of Back In Time. (Defs.' Mot. Dismiss, Ex. A., Decl. of Stanley Johnson ¶ 8.) Based upon this information, Defendant Johnson's precise role in the corporate structure of Back In Time is not entirely clear.

Even without a more thorough understanding of Defendant Johnson's corporate position, however, the Court is able to conclude that it lacks personal jurisdiction over him in this case. Plaintiff has not alleged that Defendant Johnson has any contacts with Pennsylvania in his personal capacity, or that any of his activities as a corporate officer or agent of Back In Time took place in Pennsylvania. Indeed, as Defendants note, the telephone calls between Plaintiff and Defendant Johnson "were clearly made on behalf of Defendant Back In Time, not Johnson individually. Johnson could not reasonably foresee being subjected to litigation against him as

an individual in a foreign forum in such circumstances." (Defs.' Mot. Dismiss at 5.) The Motion to Dismiss Plaintiff's claims against Defendant Johnson is granted.

**B.     Venue**

Pursuant to 28 U.S.C. § 1391, a civil action founded upon diversity of citizenship may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  Because the Court finds that it lacks personal jurisdiction over Defendant Johnson, it necessarily follows that the Eastern District of Pennsylvania is an improper venue for Plaintiff's claims against him.  Therefore, this analysis is limited to whether venue is proper with respect to Defendant Back In Time.

Back In Time argues that the Eastern District of Pennsylvania is not the appropriate venue for this case because it resides in Georgia, which is also where the events giving rise to Plaintiff's claims occurred.  (Defs.' Mot. Dismiss at 6-7.)  Clearly, venue cannot be predicated on § 1391(a)(1) or (3), and Back In Time is correct in noting that certain actions associated with this lawsuit occurred in Georgia.  Nevertheless, the Court finds that Plaintiff has alleged facts sufficient to establish venue pursuant to § 1391(a)(2).  The Thunderbird, which is the subject of this litigation, was shipped to and is currently located in the Eastern District of Pennsylvania. Plaintiff had the vehicle inspected in the Eastern District, and it was this inspection that led to the discovery of the alleged fraud.  Furthermore, because of the defects associated with the

Thunderbird's title, Plaintiff argues that he "cannot apply for a Pennsylvania Certificate of Title and, therefore, cannot register the vehicle in the Commonwealth of Pennsylvania." (Pl.'s Resp. Opp'n at 6.) In short, a substantial part of the events giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania, and the Court finds this is the proper venue in which to hear Plaintiff's claims against Defendant Back In Time.

IV.     **CONCLUSION**

For all of the foregoing reasons, the Court finds that sufficient minimum contacts exist to establish specific personal jurisdiction over Defendant Back In Time. The Eastern District of Pennsylvania is a proper venue for this case because it is here that the 1957 Ford Thunderbird is located and where a significant portion of the events leading up to this litigation occurred. With regard to Defendant Johnson, however, Plaintiff's allegations refer only to activities he undertook as an agent or officer of Defendant Back In Time. As such, the Court lacks personal jurisdiction over Defendant Johnson and the claims against him are dismissed.